**In re Willis James ODOM, Robin Lynn Odom, Debtors.**

**No. 08–25341 ABC.**

United States Bankruptcy Court, D. Colorado.

June 23, 2009.

John Turner, Colorado Springs, CO, for Debtors.

## ORDER DENYING CONFIRMATION OF PLAN

A. BRUCE CAMPBELL, Bankruptcy Judge.

Before the Court, on application for confirmation, is the Debtors' Chapter 13 Plan and the objection thereto filed by FIA Card Services aka Bank of America by eCAST Settlement Corporation as its Agent ("eCAST").[1] The Debtors are "above median income" debtors and, consequently, are required by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") to subtract from their income, the standardized expenses of 11 U.S.C. § 707(b)(2), and to contribute income to a plan for a period of not less than 60 months. 11 U.S.C. § 1325(b)(3) and (4).

eCAST is an unsecured creditor of the Debtors, holding an unsecured claim in the approximate amount of $50,000 arising from the Debtors' use of a credit card. eCAST objects to confirmation of the Debtors' plan because, it asserts, Debtors are not contributing all their "projected disposable income" to their plan as is required by section 1325(b)(1)(B). eCAST does not challenge any line item deductions taken by the Debtors on their Form 22C. Rather, eCAST challenges only the income side of the equation, particularly, the Debtors' use of their "current monthly income" ("CMI") as defined in 11 U.S.C. § 101(10A). CMI is measured by the average of Debtors' income for the six month period preceding the filing of the bank-

---

1. Based upon the Chapter 13 Trustee's failure to prosecute the objection she filed, the Court treats the Trustee's objection as abandoned.

ruptcy petition.[2] eCAST urges that the Debtors should utilize their actual gross income projected to be received during the term of the plan as reflected on their Schedule I[3] ("Schedule I Income"). In this case, the Debtors' Schedule I Income is greater than their CMI.

## ISSUE

The issue presented by eCAST's objection to Debtors' plan is whether the Debtors must contribute all that they actually have "the means" to pay in repayment of their creditors. Put another way, is it sufficient for Debtors to begin the calculation of what they must contribute to their plan with their CMI, as defined in section 101(10A), less permitted expenses, when that calculation yields less to creditors and leaves more for themselves than if they began that calculation with their Schedule I Income.

## PROCEDURAL POSTURE

On December 18, 2008, this Court convened a status and scheduling conference on the confirmation of Debtors' plan and objections thereto. The parties agreed to submit the matter on a stipulation of undisputed facts. On January 23, 2009, the parties filed a *Joint Stipulation of Facts and Issues Material to eCAST's Objection to Confirmation* ("Joint Stipulation"). In light of the recent decision in *In re Lanning*, 545 F.3d 1269 (10th Cir.2008), *petition for cert. filed* (NO. 08–998), 77 U.S.L.W. 3449, — U.S. —, — S.Ct.

——, — L.Ed.2d —— (Feb. 03, 2009), the Court afforded the parties the opportunity to file additional briefs on whether the Tenth Circuit's decision in *Lanning* might impact the case as presented by the Joint Stipulation. The parties' briefs have been filed, and the matter is at issue.

## UNDISPUTED FACTS

The following are the undisputed facts drawn from the parties' Joint Stipulation:

1. eCAST filed a proof of claim in the amount of $50,368.16.

2. eCAST's claim represents approximately 35% of the Debtors' scheduled unsecured, non-priority debt.

3. The Debtors' current monthly income ("CMI") based on their six-month pre-bankruptcy income from all sources, calculated as prescribed in 11 U.S.C. § 101(10A), is $9,246.20. The amount calculated on their Form 22C for adjustments/deductions from income is $9,141.51.

4. The Debtors' actual monthly gross income reported on their Schedule I and reflecting their current circumstances is $9,943.76; and the amount of their actual monthly expenditures on Schedule J is $7,437.28.

5. The Debtors' annualized CMI is above the applicable Colorado "median family income" and, accordingly, the "applicable commitment period" for their plan is five years under 11 U.S.C. § 1325(b)(4).

2. Section 101(10A) defines "current monthly income" to mean "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii);

... and ... includes any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor or the debtor's dependants...."

3. Official Form 6–I, "Schedule I–Current Income of Individual Debtor(s)" requires a debtor to list under oath his income as of the time of the filing of his case.

6. The Debtors' "projected disposable income" for their applicable commitment period under 11 U.S.C. § 1325(b)(2), utilizing CMI for an income figure, is $6,281.40, i.e. ($9,246.20–$9,141.51= $104.69) × 60 = $6,281.40.

7. The Debtors' "projected disposable income" for their applicable commitment period under 11 U.S.C. § 1325(b)(2) utilizing Schedule I current gross income is $48,135, i.e. ($9,943.76–$9,141.51) × 60 = $48,135.00.

8. The Debtors' Chapter 13 plan commits to the Chapter 13 Trustee $170.00 per month for 60 months, for a total of $10,200.00. The resulting payout to general unsecured creditors is approximately 4%.

## AGREED STATEMENT OF MATERIAL ISSUES OF LAW

The parties have framed the material legal issues [4] as follows:

1. Whether the Debtors' income component of the projected disposable income calculation should be the projected income of $9,943.76 (Schedule I Income); and

2. Whether the Debtors are submitting all projected disposable income to unsecured creditors over the applicable commitment period of sixty (60) months as required by 11 U.S.C. § 1325(b)(1)(B).

## POSITIONS OF THE PARTIES

The Debtors' position is very simple. Based upon the Tenth Circuit's decision in *Lanning:* (1) "the calculations on Debtors' Form 22C are presumptively correct . . . ;" (2) "on the stipulated facts here there has been no showing of a substantial change in circumstances;" and (3) Debtors' contribution of more than the amount calculated on Form 22C is sufficient, and their plan should be confirmed. Debtors' Memorandum Brief, page 1.

It is eCAST's position that Debtors' plan cannot be confirmed because Debtors "fail to devote all projected disposable income to be received during the applicable commitment period to the repayment of their unsecured debt. . . . Debtors fail to meet the projected disposable income requirement because in their calculation of projected disposable income, they fail to utilize their anticipated, projected income, as reported on Schedule I." Reply Brief in Support of Objection to Confirmation of Chapter 13 Plan, page 2.

eCAST argues that the Debtors' financial circumstances have changed such that the CMI figure no longer accurately reflects, and, in fact, substantially understates, their ability to fund a Chapter 13 Plan. The increase in income between the 6 month pre-petition average of monthly income, CMI, and the income Debtors project that they will receive over the life of the plan is $697.56 per month. That amounts to $41,853.60 over 60 months, and, eCAST contends, that is enough to rebut any presumption that Debtors' CMI accurately reflects the Debtors' available income. Such an increase "constitutes a substantial change in circumstances." Re-

**4.** One of the "agreed statements of the issues" framed by the parties was: "Whether the Debtors' expense component of the projected disposable income calculation should be $9,141.51, the expense figure total on Form 22C at Line 58." The parties, however, do not truly dispute that issue, and appear to agree that, regardless of which figure, CMI or Schedule I Income, is used to start the calculation of disposable income, what must be subtracted, in a case involving above median income debtors, are the standardized deductions of section 707(b)(2)(A). See eCAST's Reply Brief in Support of Objection to Confirmation of Chapter 13 Plan, at pg. 6 citing to Debtors' Brief at pg.1.

ply Brief in Support of Objection to Confirmation of Chapter 13 Plan, pages 5–6.

## ANALYSIS

 In *Lanning*, the Tenth Circuit held that when calculating "projected disposable income" for purposes of the section 1325(b)(1)(B) inquiry, "the starting point ... is presumed to be the debtor's 'current monthly income' as defined in 11 U.S.C. § 101(10A)(A)(i), subject to a showing of a substantial change in circumstances." *In re Lanning*, 545 F.3d 1269, 1282 (10th Cir.2008).[5] The Tenth Circuit

---

5. The question of how to calculate "projected disposable income," referred to in section 1325(b)(1)(B), has been debated since the passage of BAPCPA. The debate arises from a conflict among provisions of the statute added by BAPCPA. There is a phrase in section 1325(b)(2) which says: "the term 'disposable income' means current monthly income received by the debtor ... less amounts reasonably necessary to be expended for support of the debtor and dependents of the debtor." Section 101(10A)(A) includes a definition of "current monthly income" to mean "the average monthly income from all sources that the debtor *receives* ... derived during the 6-month period ending on the last day of the calendar month" immediately *prior to the petition date.*

In the event an objection is filed by the trustee or an unsecured creditor, however, the language of section 1325(b)(1)(B), requires the court to find that the debtor is contributing all of the debtor's *projected* disposable income *"to be received* in the applicable commitment period beginning on the date that the first payment is due under the plan." The definition in section 101(10A)(A) fixes current monthly income to the average of debtor's income derived during the six month period looking back before the petition date; and the phrase in section 1325(b)(1)(B) uses very specific terms projecting forward after the petition date.

Three approaches to reconciling these statutory inconsistencies for calculating "projected disposable income" have emerged from the cases, each of which starts with CMI. *In re Johnson*, 400 B.R. 639, 646 (Bankr. N.D.Ill.2009). The first is a mechanical or conclusive approach, that adopted by the Ninth Circuit in *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir.2008). The calculation starts with CMI. The CMI figure is then reduced by the prescribed expenses, and multiplied by 60, the number of months for the applicable commitment period of the plan for an above median income debtor.

The second approach is that adopted by the Tenth Circuit in *Lanning*. It is a "presumptive approach." *In re Johnson*, at 648. CMI is presumed to be the starting point from which the prescribed expenses are subtracted. The resulting number must then be multiplied by the number of months in the plan, unless the presumption is rebutted by a showing of a substantial change in circumstances. Where the presumption is rebutted, projected actual income, rather than CMI, is used in calculating projected disposable income.

The third approach, the result of a very thorough analysis by Judge Eugene R. Wedoff of the Bankruptcy Court of the N.D. Illinois, in *In re Johnson*, is a "harmonizing approach." *Id* at 649. That approach also starts with CMI. It, however, uses CMI not to compute an average monthly pre-petition income figure, but only to give effect to the inclusions and exclusions from monthly income from section 101(10A)(A) and (B). The necessity of doing exactly this is illustrated by circumstances where a Chapter 13 debtor shares a household with a non-debtor. Pursuant to § 1325(b)(3), the computation of § 1325(b)(1)(B) "projected disposable income," for allowable expense purposes borrows "standard" local and national expenses from § 707(b)(2)(A) and (B) when the debtor is an above median income debtor. Those expenses are measured by size of the debtor's household. To determine the debtor's ability to pay his creditors in a plan, expenses of the debtor and his dependants must be subtracted from not just the debtor's income, but that of the debtor and of others to the extent the others contribute to the debtor's living expenses. Income included in the § 101(10A)(B) CMI definition takes into account that income of others. Having looked to the CMI definition in § 101(10A) only for the revenues that make up "income," Judge Wedoff turns next to the more specific language of section 1325(b)(1)(B) to conclude that what a debtor must contribute to a plan is that income so defined, projected to be received during the time period the debtor

qualified its holding by adding: "we have not been asked to determine whether the change in Ms. Lanning's particular circumstances was substantial, and we leave it to the bankruptcy courts to determine whether an adequate showing of changed circumstances has been made in each particular case." *Id.* Thus, the Tenth Circuit explicitly declined to offer any guidance as to what constitutes "an adequate showing of changed circumstances." It left that determination to the trial court's discretion on a case by case basis.

What the Tenth Circuit Court did offer in *Lanning* was its view of the "best statement of the overarching purpose of the consumer aspects of the BAPCPA ...: 'The heart of [BAPCPA's] consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford.' " *In re Lanning*, 545 F.3d at 1280–1281, citing H.R.Rep. No. 109–31, pt.1 at 2 (2005) *reprinted in* 2005 U.S.C.C.A.N. 88, 89.

The *Lanning* Court acknowledges that the foregoing statement, which comes from a House Report issued by the Committee on the Judiciary just prior to the enactment of the bill, "is exceedingly general for our purposes and expresses the view only of the members of the Judiciary Committee." *In re Lanning*, 545 F.3d at 1280–1281. Regardless, "it is consistent with the forward-looking approach, which assists a Chapter 13 debtor to propose a confirmable plan and repay creditors the maximum she can afford—no more and no less." *In re Lanning*, 545 F.3d at 1281.

eCAST argues that the increase in Debtors' income of $697.56 monthly constitutes a substantial change in circum-

stances sufficient to rebut the presumption that the Debtors' CMI, reduced by the standardized expenses, dictates what these debtors must pay to meet the projected disposable income requirement for confirmation. The Debtors, for their part, assert that there have been no facts presented to support a finding of substantial change in circumstances. A mere seven and one half (7 1/2) percent increase in monthly gross income does not amount to a substantial change in circumstances. Thus, Debtors maintain, starting the calculation of projected disposable income with CMI is presumed to be sufficient; and their plan, to which they are contributing more than the calculation based upon CMI would dictate, is, therefore, confirmable.

Both Debtors and eCAST ask this Court to consider whether there has been a substantial change of circumstances presented by the facts in the case before it. In so doing, both Debtors and eCAST argue that the respective result each seeks is mandated by the holding of *Lanning*; but each does so in a vacuum. Both Debtors and eCAST neglect to consider the fact pattern of hardship from which the *Lanning* holding emerges.

To apply appropriately the holding of the Tenth Circuit in *Lanning*, courts bound by it must consider the facts out of which it arose. The debtor in that case, Ms. Lanning, on losing her job, had received a buyout from her employer within the six months prior to the filing of her bankruptcy case. That income was enough that it placed her CMI, when annualized, above the median income for a debtor of like sized household in Kansas. That status, as an above-median income debtor, required her to use the standard "means test" deductions from section 707(b)(2)(A) of the Code. It also required

must commit to fund the plan pursuant to § 1325(b)(4). *Id.* at 649.

her to commit to pay into her plan for a period of 60 months.

Ms. Lanning's actual monthly income when she filed bankruptcy, that reflected on her Schedule I, was significantly less than the six month pre-petition average reflected by CMI. She proposed a plan based upon what she could pay as reflected on Schedule I, not based upon her CMI. The Chapter 13 trustee objected arguing that Ms. Lanning was required to contribute CMI minus the standardized deductions of section 707(b), multiplied by 60, over the life of her plan. The debtor, however, would be unable to fund such a plan because she did not project having the actual income during the life of her plan to support such payments, and, thus, confirmation would fail for lack of feasibility. 11 U.S.C. § 1325(a)(6). In addition, as an above median income debtor with sufficient net income, calculated using CMI, Ms. Lanning would "fail" the means test of Chapter 7. 11 U.S.C. § 707(b)(1) and (2). Not only could she not confirm a Chapter 13 plan, she would not be entitled to Chapter 7 relief.

Faced with this dilemma and the hardship Ms. Lanning would endure, the bankruptcy court, the Tenth Circuit BAP, and, ultimately, the Tenth Circuit Court of Appeals, all agreed with Ms. Lanning. In so doing, the Tenth Circuit adopted the "presumptive approach" to afford debtors like Ms. Lanning bankruptcy relief. It permitted her to pay her creditors only what she was able to pay for the applicable commitment period of 60 months, holding that CMI is only a presumption of the debtor's income, but that presumption may be rebutted by a showing of a substantial change in circumstances.

In *Lanning*, the scenario was the opposite of what is before the Court in this case. Ms. Lanning had an unusual increase in her income during the six months

pre-petition making her CMI figure artificially high. On a going forward basis, Ms. Lanning had substantially less income than that reflected by her CMI to contribute to plan payments. She simply could not fund a plan using the CMI number if the court, in her substantially changed circumstances, adopted the literal approach for calculating "projected disposable income," suggested by section 1325(b)(2). Instead, under the circumstances of Ms. Lanning, the Tenth Circuit concluded that there is merely a presumption that CMI provides the income increment for calculating "projected disposable income" for section 1325(b)(1) purposes. A debtor may rebut that presumption by showing a "substantial change in circumstances."

In this case, the Debtors have the means to pay more during the life of their plan than would be required of them if they used their CMI, six month pre-petition average, to calculate their projected disposable income. Debtors rely on *Lanning* to permit them to contribute less than what they can afford, or have the "means," to pay into their plan. Such cannot be the intent of *Lanning*.

On the other hand, to accept the invitation presented by eCAST to engage in a determination of just how much of an increase in income is a "substantial change in circumstances," may lead to absurd results which are also unintended by the message of *Lanning*. In cases such as the Odoms,' where the circumstances are the opposite of Ms. Lanning's, a mechanical application of the holding of *Lanning* would force courts into a pure mathematical calculation to determine whether the percentage increase in a debtor's income is "substantial." Here the Odoms' Schedule I Income is only a 7 1/2 % increase over their CMI. The logical question which follows from eCAST's argument is whether this 7 1/2 % increase is "substantial." An

overly literal application of *Lanning,* comparing a debtor's income pre- and post-petition for any change in circumstances, overlooks an analysis of the change in payout to unsecured creditors. Yet here, that difference is, in fact, significant. If the Odoms use CMI in their projected disposable income calculation, they will pay unsecured creditors $6,281.40; if they use Schedule I Income, they will pay unsecured creditors $48,135.00.

*Lanning* reflects the belief of the Tenth Circuit that the BAPCPA changes to section 1325(b) were intended to ensure that "consumer debtors repay their creditors the maximum they can afford." *Lanning's* holding is manifestly derived from the fact that the use of CMI for debtors whose pre-bankruptcy income was artificially inflated, unfairly penalizes them by denying them access to any relief in bankruptcy. To extend *Lanning's* holding to cases where the debtors' current and future income is greater than CMI, may allow debtors a windfall, at the expense of creditors, in a manner directly contrary to *Lanning's* underlying rationale.

In light of the foregoing, this Court concludes that *Lanning's* presumptive use of CMI as the starting point for calculating projected disposable income, absent a change in circumstances, is not intended by the Tenth Circuit to apply to cases such as the Odoms' where the debtors' actual and projected future income is greater than CMI. In such cases, the reasoning of *Lanning* requires debtors to pay what they can afford to pay. Here, the Odoms must pay the net of their Schedule I Income minus the standardized deductions as required by section 707(b)(2)(A).

## CONCLUSION

Accordingly, this Court finds that the Debtors have failed to demonstrate that they are committing all their projected disposable income to their plan, a requirement that the Debtors must satisfy in order to achieve confirmation of their plan. Accordingly, it is

ORDERED that Debtors' Motion to Confirm their plan is DENIED; and it is

FURTHER ORDERED that Debtors are afforded a period of 15 days from the entry of this Order within which to file an amended plan consistent with this Order, and prosecute it in accordance with the rules, failing which this case may be dismissed.