*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0211p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re:  DAVID ANDREW DARROHN;
MARGUERITE MOTTOLA DARROHN,

                                    *Debtors.*

_____

DAVID ANDREW DARROHN; MARGUERITE
MOTTOLA DARROHN,

                        *Plaintiffs-Appellees,*

        *v.*

HENRY E. HILDEBRAND, III, Trustee,

                        *Defendant-Appellant.*

No. 09-5499

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
No. 08-09075—George C. Paine, II, Bankruptcy Judge.

Argued:  April 27, 2010

Decided and Filed:  July 22, 2010

Before:  SUHRHEINRICH, McKEAGUE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Henry E. Hildebrand, III, OFFICE OF THE CHAPTER 13 TRUSTEE,
Nashville, Tennessee, for Appellant.  Mary Elizabeth Ausbrooks, ROTHSCHILD &
AUSBROOKS, PLLC, Nashville, Tennessee, for Appellees.  John P. Sheahan, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.
**ON BRIEF:**  Henry E. Hildebrand, III, OFFICE OF THE CHAPTER 13 TRUSTEE,
Nashville, Tennessee, for Appellant.  Mary Elizabeth Ausbrooks, ROTHSCHILD &
AUSBROOKS, PLLC, Nashville, Tennessee, Thomas F. Bloom, LAW OFFICE, Nashville,
Tennessee, for Appellees.  John P. Sheahan, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Amicus Curiae.

1

————————————

**OPINION**

————————————

McKEAGUE, Circuit Judge.  In this direct appeal from the bankruptcy court, we are called upon to interpret a provision of Chapter 13 of the Bankruptcy Code that requires debtors to commit their "projected disposable income" to the repayment of unsecured claims. The Bankruptcy Code defines projected disposable income by requiring  calculation of a debtor's current monthly income less certain reasonably necessary expenses.  Henry Hildebrand, III, trustee in bankruptcy ("Trustee"), brings this appeal and claims error in the bankruptcy court's approval of David and Marguerite Darrohn's bankruptcy plan due to alleged miscalculations in the Darrohns' income and expenses under the projected disposable income formulation.  With guidance from the Supreme Court's recent decision in *Hamilton v. Lanning*, -- S.Ct. ----, 78 U.S.L.W. 4518, 2010 WL 2243704 (No. 08-998 June 7, 2010), we REVERSE the bankruptcy court's approval of the Darrohns' plan and REMAND for a recalculation of their projected disposable income.

**I.**

David and Marguerite Darrohn filed a Voluntary Petition for Bankruptcy under Chapter 13 of the Bankruptcy Code on October 3, 2008.  The Darrohns included within their petition a set of statutorily required schedules, which detail financial information as it existed at the time the petition was filed.  Specifically, Schedule D listed the Darrohns' creditors holding secured claims and included the property securing the claim along with the outstanding debt.  In Schedule D, the Darrohns listed Countrywide Home Loans and Regions Bank as secured creditors holding mortgages secured by two pieces of real property.  The Countrywide Home Loans mortgage was secured by property located at 410 Richards Way Drive, Cordova, Tennessee, which served as the Darrohns' primary residence in the period before filing the bankruptcy petition.  The Regions Bank mortgage was secured by property located at 916 North Mcleansboro, Benton, Illinois, which served as the residence of David Darrohn's father.  It is undisputed that the Darrohns intended to surrender both of these properties as part of their bankruptcy plan and, therefore, would no longer be required to pay the mortgages.

Further, the Darrohns filed Schedule I, which listed their monthly income at the time the bankruptcy petition was filed. Schedule I listed David Darrohn's monthly income as $6,916, Marguerite Darrohn's monthly income as $1,820, and a monthly commission income of $1,510. The Darrohns' monthly income on Schedule I totaled $7,461.01 after payroll deductions. Finally, the Darrohns filed Schedule J, listing their current monthly expenditures. Schedule J calculated the Darrohns' average monthly expenditures as $6,505. Based on calculations in Schedules I and J, the Darrohns had a monthly net income totaling $956.

Aside from the above-listed schedules, the Darrohns filed a Chapter 13 Statement of Current Monthly and Disposable Income, also known as Form B22C. This form instructs petitioners to calculate their income by averaging the income for the "six calendar months prior to filing the bankruptcy case, ending the last day of the month before the filing." At the bankruptcy hearing, David Darrohn testified that during this six-month look-back period, he lost his job, which carried an annual salary of $100,000. After a 90-day period of unemployment, David Darrohn secured another job, which carried an annual salary of $83,000. Thus, based on Form B22C's instructions, David Darrohn's monthly income calculated to $4,300.50, and Marguerite Darrohn's monthly income amounted to $2,052.25. The Darrohns' combined monthly income on Form B22C totaled $6,352.75, which was significantly less than the amount listed on Schedule I. Form B22C also instructs petitioners to list debt payments secured by their home, which are then deducted from petitioners' total monthly income. Under this section, the Darrohns listed payments for the mortgages held by Countrywide Home Loans and Regions Bank, though the couple intended to surrender these properties. After subtracting all of the allowable deductions from their monthly income, the Darrohns' disposable monthly income under Form B22C totaled -$2,267.08.

Chapter 13 also requires petitioners to file a proposed repayment plan, under which debtors repay unsecured creditors over time based on how much the debtors can afford on a monthly basis. These monthly payments are derived from the debtors' disposable monthly income calculated in Form B22C. Though the Darrohns' Form B22C disposable income totaled a large negative number, they nevertheless proposed to pay creditors $550 bi-weekly for a period of 60 months. This repayment schedule would have left unsecured creditors receiving substantially less than the full amount owed to them. The Trustee therefore

objected to the Darrohns' proposed plan.  The Trustee proposed that the mortgage payments to Countrywide Home Loans and Regions Bank be omitted from the Darrohns' Form B22C income deductions because the Darrohns would no longer be making payments on these mortgages.  In addition, the Trustee proposed that the Darrohns' monthly income listed in Schedule I be used to calculate their disposable monthly income because the formulation used in Form B22C artificially deflated their income by including a 90-day period of unemployment for David Darrohn.  The Trustee specifically argued that the bankruptcy court should have considered the Darrohns' changed circumstances in confirming the plan.

In deciding whether to confirm the Darrohns' proposed plan, the bankruptcy court noted that the "case presents the conundrum that every Bankruptcy Court in America practically has written an opinion on, and that's how you calculate disposable income when the numbers come out differently using Schedules I and J versus B-22(c)."  Tr. of Bankruptcy Proceedings at 45:21–25, In re: Darrohn, 3:08-bk-09075 (Bankr. M.D. Tenn. Dec. 15, 2008).  After recounting the various methods courts have employed to resolve this problem, the bankruptcy court rejected the Trustee's proposals.  The bankruptcy court determined that the Darrohns' monthly income calculated in accordance with Form B22C should serve as the starting point for the Darrohns' disposable income, rather than the larger amount reflected in Schedule I.  The court also determined that the Darrohns could deduct mortgage payments for the surrendered properties.  Both of these determinations were predicated on the bankruptcy court's interpretation of Chapter 13 and the court's belief that it could not account for the Darrohns' changed circumstances.  The bankruptcy court then confirmed the Darrohns' proposed plan of $550 bi-weekly for repayment to unsecured creditors.  The Trustee now appeals the plan confirmation.  Specifically, the Trustee alleges that the bankruptcy court erred in using the Darrohns' income calculated under Form B22C, rather than the income listed in Schedule I, and in allowing the Darrohns to deduct mortgage payments even though they intended to surrender the properties.

## II.

In this case, we must review the bankruptcy court's interpretation of two sections in Chapter 13.  We review the bankruptcy court's legal determinations de novo.  *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 449 (6th Cir. 2009).

**A.**

To better understand how the Darrohns' case fits within the statutory framework of Chapter 13, we begin by addressing the requirements of this chapter. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 revised the Bankruptcy Code in part by requiring above-median income debtors to file for bankruptcy under the reorganization provisions in Chapter 13. *Schultz v. United States*, 529 F.3d 343, 347 (6th Cir. 2008). This revision meant that above-median income debtors would be required to make more payments to unsecured creditors under their bankruptcy plans. *Id.* In this case, the Darrohns' income fell above the median income for a family of four in Tennessee; they were therefore required to file under the reorganization provisions of Chapter 13.

A debtor filing for bankruptcy under Chapter 13 must propose a plan that provides for the submission of a portion of future income to the trustee. 11 U.S.C. §§ 1321, 1322. The bankruptcy court then must confirm the debtor's plan in accordance with the provisions of Chapter 13. *Id.* § 1325. Section 1325 of Chapter 13 specifically requires the following—

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan --
>
> . . .
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
> (2) For the purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended --
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor . . . ;
> . . .
> (3) Amounts reasonably necessary to be expended under paragraph (2) . . . shall be determined in accordance with subparagraph (A) and (B) of section 707(b)(2), if the debtor has a current monthly income, when multiplied by 12, greater than --
> . . .
> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median income of the applicable State for a family of the same number . . . .

*Id.* § 1325(b). This section therefore specifies that the bankruptcy court may not confirm a plan unless the plan provides that all of a debtor's "projected disposable income" be submitted to unsecured creditors and that this amount be calculated by taking the debtor's "disposable income" less "amounts reasonably necessary" for maintenance and support.

To determine a debtor's "disposable income," the Code directs us to the term "current monthly income," which is generally defined as the average monthly income that the debtor receives in the six-month period prior to filing the bankruptcy petition. *Id.* §101(10A)(A). In addition, if the debtor is an above-median income debtor, the Code directs us to the Chapter 7 Means Test for a determination of the "amounts reasonably necessary" to be expended for maintenance and support. *Id.* §§ 707(b)(2), 1325(b)(3). The Chapter 7 Means Test lists certain allowable expenses that a debtor may deduct from his current monthly income.[1] *Id.* § 707(b)(2)(A)(i). Specifically, this section allows a debtor to deduct "average monthly payments on account of secured debts . . . ." *Id.* § 707(b)(2)(A)(iii). The majority of courts applying the Means Test to Chapter 7 petitioners have held that these petitioners may deduct secured debt payments even if the petitioner intends to surrender the property in bankruptcy. *See Morse v. Rudler*, 576 F.3d 37, 45 (1st Cir. 2009) (recounting court decisions applying the Means Test to Chapter 7 petitioners).

Applying this statutory framework to this case, we must determine whether the bankruptcy court should have calculated the Darrohns' "disposable income" using the income from David Darrohn's newly secured job, rather than basing the calculation solely on the six-month look-back period as defined by "current monthly income." In addition, we must determine whether the bankruptcy court properly allowed the Darrohns to deduct the mortgage payments on surrendered property as an "amount[] reasonably necessary" for maintenance and support, rather than considering the Darrohns' intent to surrender these properties.

---

[1] The Means Test determines whether the debtor is an above-median income debtor, such that he can afford to file under the reorganization provisions of Chapter 13. *Schultz*, 529 F.3d at 347.

**B.**

Since this case was submitted, the Supreme Court released its opinion in *Hamilton v. Lanning*, --- S.Ct.----, 78 U.S.L.W. 4518, No. 08-998, 2010 WL 2243704 (June 7, 2010).  In *Lanning*, the Supreme Court decided "how a bankruptcy court should calculate a debtor's 'projected disposable income'" if the debtor's circumstances change in the period leading up to the bankruptcy filing. *Id.* at *4.  The debtor in *Lanning* had received a one-time buyout from her employer during the period leading up to bankruptcy. *Id.* at *5.  The buyout in turn caused her current monthly income on Form B22C, calculated using the six-month look-back formula, to greatly exceed her then-existing monthly income reported on Schedule I. *Id.*  Under the disposable income calculations in Form B22C, the debtor would have been required to make monthly payments to unsecured creditors far in excess of what she could actually afford. *Id.*

In deciding whether the bankruptcy court could consider the debtor's changed circumstances, the Court focused on the term "*projected* disposable income" as used in Section 1325. *Id.* at *6.  The Court noted that the ordinary meaning of "projected," which is not defined in the Bankruptcy Code,  accounts for future events that might affect the ultimate outcome. *Id.*  The Court also noted that prior to the 2005 amendments to the Bankruptcy Code, bankruptcy courts "had discretion to account for known or virtually certain changes in the debtor's income," and nothing in the amendments indicated that this authority had changed. *Id.* at *7.  Based on textual interpretation as well as past precedents, the Court concluded that "when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Id.* at *12.  Finally, the Court rejected textual arguments that Section 1325 required a mechanical application of the projected disposable income formula, without accounting for debtors' changed circumstances. *Id.* at *9.  According to the Court, a mechanical application would clash with the terms of Section 1325 and would lead to "senseless results." *Id.* at *8, *10.  Thus, the bankruptcy court in *Lanning* properly considered the debtor's buyout payment, and the fact that her income was

substantially less than that calculated under Form B22C, in deciding to confirm the plan. *Id.* at *12.

## C.

Applying *Lanning* to the Darrohns' case, the bankruptcy court erred in confirming the Darrohns' proposed plan. The facts in the Darrohns' case differ from those in *Lanning* because in this case, the income calculated using the six-month look-back period resulted in a smaller amount than the debtors' actual monthly income. In addition, this case involves changes in the debtors' anticipated monthly expenses, which was not directly at issue in *Lanning*. Yet even with these factual differences, the issues in this case both fall squarely within the Court's decision in *Lanning*.

Beginning with the issue of the Darrohns' current monthly income, the bankruptcy court erred when it determined that it was required to use the income calculated on Form B22C, which was derived from the six-month look-back formula. In confirming the Darrohns' plan, the bankruptcy court stated that "the correct calculation of projected disposable income . . . is current monthly income determined in accordance with Section 101-10(a)." Tr. of Bankruptcy Proceedings at 46:22–25. The court then rejected the Trustee's arguments that the figures in Schedule I should have been the starting point for the Darrohns' monthly income. Yet because David Darrohn was unemployed for 90 days during the six-month look-back period, the figure used by the bankruptcy court was substantially less than the Darrohns' actual income at the time of confirmation. David Darrohn's new job—carrying an annual salary of $83,000—was a "known or virtually certain" event at the time of confirmation. Therefore, the bankruptcy court had the authority to account for this change in calculating the Darrohns' projected disposable income. *See Lanning*, 2010 WL 2243704 at *12. And by using amounts derived solely from the Darrohns' past income, rather than their *projected* income, the bankruptcy court's decision clashed with the mandates of Section 1325. *See id.* at *10.

Moving to the issue of the Darrohns' reasonably necessary monthly expenses, the bankruptcy court  also erred in failing to account for the Darrohns' intent to

surrender properties securing the mortgages. In calculating their projected disposable income, the Darrohns' deducted over $2,700 in mortgage payments from their current monthly income, though they were no longer responsible for these payments. Responding to the Trustee's objection to these deductions, the bankruptcy court stated that "you have to determine these things at the petition" and "[a]t the petition three mortgages were contractually scheduled as due by this Debtor." Tr. of Bankruptcy Proceeding at 51:23–25, 52:1. The court then confirmed the Darrohns' plan, which was premised on a projected disposable income that included deductions for the mortgage payments. This calculation also clashed with the language of Section 1325. *See Lanning*, 2010 WL 2243704 at *8.

While much of the Court's analysis in *Lanning* focused on the income side of the projected disposable income formulation, the holding clearly applied to "changes in the debtor's income *or expenses* . . . ." *Id.* at *12 (emphasis added). Further, the Court rested its holding on the meaning of the term "projected disposable income," which is calculated using a debtor's current monthly income and his reasonably necessary expenses. Thus, *Lanning* also governs the bankruptcy court's determination on the deduction for mortgage payments. Because it is undisputed that the Darrohns intended to surrender these properties, this represents a change in the Darrohns' "expenses that [was] known or virtually certain at the time of confirmation." *Id.* The bankruptcy court therefore should have accounted for this changed circumstance, and its failure to do so violated the requirements of Section 1325. *See id.* at *8.

## III.

For the foregoing reasons, we REVERSE the bankruptcy court's confirmation of the Darrohns' bankruptcy plan. We REMAND for a determination of the Darrohns' projected disposable income in light of *Lanning* and this decision.