In re Peter Albert Helmut LIEHR, Jr., also known as Peter A.H. Liehr, Jr., also known as Peter A.H. Liehr, also known as Peter Liehr, Jr., also known as Peter Liehr, also known as Peter Albert Helmut Liehr, and Karen Kay Liehr, also known as Karen K. Liehr, also known as Karen Liehr, Debtors.

**Sally J. Zeman, Appellant,**

v.

**Peter Albert Helmut Liehr, Jr., and Karen Kay Liehr, Appellees.**

In re Peter Albert Helmut Liehr, Jr, Peter Liehr, Jr, Peter Liehr, Peter A.H. Liehr, Jr, Peter A.H. Liehr, Peter Albert Helmut Liehr, and Karen Kay Liehr, also known as Karen K. Liehr, Karen Liehr, Debtors.

**eCast Settlement Corporation, assignee of FIA Card Services, also known as Bank of America and Wells Fargo Card Services, Appellant,**

v.

**Peter Albert Helmut Liehr, Jr., and Karen Kay Liehr, Appellees.**

**BAP Nos. CO–09–071, CO–09–072. Bankruptcy No. 08–21528.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Nov. 4, 2010.

Brent R. Cohen and Chad S. Caby of Rothgerber Johnson & Lyons, LLP, Denver, CO, for Appellant Sally J. Zeman.

William Andrew McNeal and Gilbert B. Weisman of Beckett & Lee LLP, Malvern, PA, for Appellant eCast Settlement Corporation.

Tara E. Gaschler of The Gaschler Law Firm LLC, Denver, CO, for Appellees.

Before MICHAEL, NUGENT, and SOMERS, Bankruptcy Judges.

## OPINION

MICHAEL, Bankruptcy Judge.

Standing Chapter 13 trustee Sally J. Zeman ("Zeman") and creditor eCast Settlement Corporation ("eCast") appeal the bankruptcy court's order confirming the Chapter 13 plan of debtors Peter Albert Helmut Liehr, Jr. and Karen Kay Liehr

(the "Liehrs"). Zeman and eCast argue the bankruptcy court erred in confirming the plan over their objections because it does not pay the unsecured creditors in full, nor does it apply all of the Liehrs' projected disposable income to make plan payments to unsecured creditors as required by 11 U.S.C. § 1325(b)(1)(B).[1] We agree with Zeman and eCast, and reverse and remand the bankruptcy court's plan confirmation order.

## I. BACKGROUND FACTS

The relevant facts are not in dispute.[2] The Liehrs filed for Chapter 13 relief on July 31, 2008. With their petition, the Liehrs filed a Schedule A reflecting ownership of a residence in Colorado Springs (the "Residence"), and a Schedule D reflecting debts owed to Aurora Loan Services and Chase Home Equity secured by mortgages on the Residence. The Liehrs' proposed plan provided for surrender of the Residence to the mortgage holders. Further, the Liehrs' Statement of Financial Affairs indicated foreclosure proceedings had been instituted with respect to the Residence. While the case was pending, the bankruptcy court granted Aurora Loan Services relief from the automatic stay to continue its foreclosure action.

As "above-median income" debtors,[3] the Liehrs were required to fully complete Form 22C[4] to calculate disposable income to be used in determining payments under the plan. On Line 47 of Form 22C, the Liehrs scheduled a deduction for future payments on secured claims in the amount of $4,222.16. That amount represents the total of the two mortgage payments on the Residence that was to be surrendered under the proposed plan. Additionally, on Line 25B of Form 22C, the Liehrs scheduled an IRS standard housing expense deduction. Under the proposed plan, the Liehrs would make 60 monthly payments of $1,320 resulting in a dividend of approximately 21% to unsecured creditors.

Both Zeman and eCast objected to the proposed plan, arguing that the Liehrs were not paying all of their projected disposable income to unsecured creditors as required by § 1325(b)(1)(B). Specifically, they asserted the Liehrs should not be permitted to deduct the monthly mortgage payments on the Residence they intended to surrender under the plan because it significantly understated their projected disposable income and decreased payments to unsecured creditors. Although Zeman objected to other expenses claimed by the Liehrs, Zeman and eCast jointly requested partial summary judgment on this issue. The bankruptcy court overruled the objections by order dated September 22, 2009,[5] and subsequently confirmed the Liehrs' proposed Chapter 13 plan ("Plan") on November 20, 2009.[6] Zeman and eCast timely appealed the bankruptcy court's Plan confirmation order.[7]

---

1. Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

2. This statement of the facts is taken from the bankruptcy court's order overruling Zeman's and eCast's objections to the Liehrs' proposed plan. *See Order* at 1–2, *in* Appellant's App. at 182–83.

3. The Liehrs' family income exceeds the median income of families the same size in their state as calculated by the Census Bureau. *See* 11 U.S.C. § 101(39A).

4. Official Form 22C is a "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income."

5. *Order, in* Appellant's App. at 182.

6. *Order Confirming Chapter 13 Plan, in* Appellant's App. at 262.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[8]  Neither party elected to have this appeal heard by the United States District Court for the District of Colorado.  The parties have therefore consented to appellate review by this Court.

■ A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " [9]  Here, the bankruptcy court's order confirming the Liehrs' Chapter 13 Plan is final for purposes of appellate review.[10]

## III. STANDARD OF REVIEW

■ The facts of this case are undisputed.  Zeman and eCast appeal the bankruptcy court's interpretation of provisions of the Bankruptcy Code.  Thus, this appeal presents only legal issues, i.e., statutory construction, for determination.  Legal questions are reviewed *de novo*.[11]  *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[12]

## IV. ANALYSIS

■ In response to perceived abuses of the bankruptcy system, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress altered the language in § 707(b) and instituted what has come to be known as the "means test."  The means test has the effect of shifting would-be Chapter 7 debtors into Chapter 13 cases when they are presumed under the means test to be able to repay their creditors.[13]  Generally speaking, the means test consists of determining a debtor's current monthly income,[14] subtracting monthly expenses permitted in § 707(b)(2)(A)(ii), (iii) & (iv),[15] multiplying by 60, and then comparing such result to two numbers stated

7. Creditor eCast requested an extension of time for filing its notice of appeal which was granted by the bankruptcy court.  *See Order to Enlarge Time Within Which to File Notice of Appeal, Pursuant to Fed. R. Bankr.P. 8002(C)*, in BAP Appeal No. CO–09–072, Docket No. 64537.

8. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–1 (2002).

9. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

10. *See United Student Aid Funds, Inc. v. Espinosa,* —— U.S. ——, 130 S.Ct. 1367, 1376, 176 L.Ed.2d 158 (2010).

11. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

12. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

13. The legislative history of BAPCPA indicates: "The heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford."  H.R. Rep. 109–31(I) (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89.

14. Current monthly income is defined in 11 U.S.C. § 101(10A).

15. Many of the expenses are determined according to National Standards and Local Standards issued by the Internal Revenue Service, as opposed to a debtor's actual expenses.

in § 707(b)(2)(A)(i).[16]  If the debtor's net income after expenses exceeds the greater of the two statutory numbers, the bankruptcy court may dismiss the debtor's Chapter 7 case, or with the debtor's consent, convert it to a Chapter 13 case.[17] The issue on appeal here is created in part by incorporation of the "means test" provisions of § 707(b) into the Chapter 13 plan confirmation requirements.  If a Chapter 13 debtor is an above-median income debtor, then that debtor's disposable income is defined as current monthly income less expenses determined in accordance with § 707(b)(2)(A), i.e., the same expenses allowed under the "means test." [18]

To be confirmable, a proposed Chapter 13 plan must contain all provisions required by § 1322, and meet all requirements of § 1325(a).  In addition, if either a trustee or an unsecured creditor objects to the proposed plan, then the requirements of § 1325(b)(1) must also be met.  Section 1325(b)(1) provides as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim;  or

(B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.[19]

In this case, under the Liehrs' Plan, the unsecured creditors are not being paid in full.  Therefore, the Plan must apply all of the Liehrs' *projected disposable income* to payments to unsecured creditors during the plan term, which Zeman and eCast argue it does not do.

While the Bankruptcy Code specifically defines "disposable income," [20] it does not define "projected disposable income" ("PDI").  The absence of statutory guidance on what constitutes PDI post-BAPCPA is what generates the issue in this Chapter 13 case and a multitude of others like it.  A throng of courts across the country, including this one,[21] have expressed varying opinions on the proper means to calculate PDI that can generally be categorized as applying either a "mechanical approach" (i.e., defining PDI as the disposable income number generated by the means test without exception) or a "forward-looking approach" (allowing a court to take into consideration known changes in disposable income as it determines PDI).  Now we must again enter the fray.[22]

---

16.  *See also* Fed. R. Bankr.P. 1017.

17.  11 U.S.C. § 707(b)(1).

18.  11 U.S.C. § 1325(b)(3).

19.  11 U.S.C. § 1325(b)(1) (emphasis added).

20.  11 U.S.C. § 1325(b)(2).

21.  *See In re Lanning,* 380 B.R. 17 (10th Cir. BAP 2007), *aff'd,* 545 F.3d 1269 (10th Cir. 2008), *aff'd,* — U.S. ——, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).

22.  The epic battle between use of the "mechanical approach" versus the "forward-looking approach" for determining projected disposable income has been waged in what seems like an infinite number of bankruptcy and appellate courts for at least four years now, no doubt generating much weeping, and wailing, and gnashing of teeth.  The first decision to address the issue appears to be *In re Hardacre,* 338 B.R. 718 (Bankr.N.D.Tex. 2006).  *See In re Lanning,* 545 F.3d 1269, 1275 (10th Cir.2008).

The decision this Court must make is: a) whether a debtor's "disposable income" as defined in § 1325(b)(2), which incorporates expenses as set forth in § 707(b)(2)(A), is the debtor's PDI for purposes of plan payments under § 1325(b)(1)(B); *or,* b) whether a debtor's disposable income is a rebuttable presumption or "starting point" that may be deviated from to take into consideration changes in circumstances known at the time of plan confirmation. More specifically, the question is whether the Liehrs' PDI for purposes of Plan payments may be reduced by the amount of secured debt on the Residence that is contractually due as of the petition date, notwithstanding the fact that these payments will cease under the Plan as a result of surrendering the Residence. As explained below, in light of the United States Supreme Court's recent decision in *Hamilton v. Lanning ("Lanning"),*[23] the answer is no.[24]

In *Lanning,* an above-median income debtor had an artificially high current monthly income on Form 22C as a result of a one-time buyout from her employer during the six-month period prior to filing bankruptcy. Because of the buyout, her Form 22C income greatly exceeded her then current income as reported on Schedule I. Realizing the debtor would not be able to make payments based on Form 22C disposable income, the bankruptcy court embraced the forward-looking approach, and allowed a downward adjustment of debtor's monthly income for purposes of determining PDI, and thus payments under the plan.[25] The trustee appealed, and this Court affirmed.[26] The trustee appealed to the Tenth Circuit, which also adopted the forward-looking approach and affirmed.[27] However, in ruling on changes to the income side of PDI in its *Lanning* decision, the Tenth Circuit intentionally avoided opining with respect to the expense side. In a footnote, the Tenth Circuit stated "[a]lso not at issue is the bankruptcy court's holding that Ms. Lanning's Form B22C expenses were the relevant expenses for purposes of arriving at her 'projected disposable income,' even though those expenses were greater than her actual, Schedule J expenses."[28] The Tenth Circuit further emphasized this point in its holding:

> For the foregoing reasons, we hold that, *as to the income side* of the § 1325(b)(1)(B) inquiry, the starting point for calculating a Chapter 13 debtor's "projected disposable income" is presumed to be the debtor's "current monthly income," as defined in 11 U.S.C. § 101(10A)(A)(i), subject to a showing of substantial change in circumstances.[29]

The trustee then petitioned the Supreme Court for certiorari. The Supreme Court granted certiorari, affirmed the Tenth Circuit, and in its *Lanning* opinion, ended the long-running polemic over the method for determining PDI by adopting the forward-looking approach not only for the income

**23.** —— U.S. ——, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).

**24.** We note that the bankruptcy court did not have the benefit of the Supreme Court's *Lanning* decision when it ruled in this case.

**25.** *In re Lanning,* No. 06–41037, 2007 WL 1451999 (Bankr.D.Kan. May 15, 2007).

**26.** *In re Lanning,* 380 B.R. 17 (10th Cir. BAP 2007).

**27.** *In re Lanning,* 545 F.3d 1269 (10th Cir. 2008).

**28.** *Id.* at 1274 n. 4.

**29.** *Id.* at 1282 (emphasis added).

side of the calculation, but for the *expense* side as well.

■ As previously described, in *Lanning,* the Supreme Court was presented only with a change in circumstances on the income side of the PDI calculation. Nevertheless, the Supreme Court specifically stated: "we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income *or expenses* that are known or virtually certain at the time of confirmation."[30] All of the Supreme Court's reasoning in *Lanning* with respect to the debtor's change in income is equally applicable to the expense side of the PDI equation.

First, the Supreme Court emphasized that the term "projected" should be given its ordinary meaning, commenting that "while a projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome."[31] The Supreme Court then discussed pre-BAPCPA practice, and acknowledged that courts often took into account known or nearly certain changes to debtors' income and expenses when calculating PDI income.[32] As a result, the Supreme Court opined that it "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure."[33]

The Supreme Court further declared that the mechanical approach clashes repeatedly with the terms of § 1325(b)(1). First, the Supreme Court stated that § 1325(b)(1)(B)'s reference to all of the debtor's "projected disposable income to be received in the applicable commitment period" is effectively read out of the statute if a mechanical approach is used.[34] Second, the Supreme Court reasoned that had "Congress intended for projected disposable income to be nothing more than a multiple of disposable income in all cases, we see no reason why Congress would not have required courts to determine that value as of the *filing* date of the plan," rather than directing that PDI be determined "as of the effective date of the plan."[35] And third, the Supreme Court stated that since PDI is to be "applied to make payments," the statute is "naturally read to contemplate that the debtor will actually pay creditors in the calculated monthly amounts. But when, as of the effective date of a plan, the debtor lacks the means to do so, this language is rendered a hollow command."[36] The Supreme Court then concluded that in some instances, "the mechanical approach would produce senseless results that we do not think Congress intended."[37] On the facts before this Court, we think application of the mechanical approach would produce a senseless result: namely that the Liehrs

---

**30.** *Lanning,* — U.S. —, 130 S.Ct. 2464, 2478, 177 L.Ed.2d 23 (2010) (emphasis added).

**31.** *Id.* at 2472.

**32.** *Id.*

**33.** *Id.* at 2473 (quoting *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 454, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007)). *See also id.* at 2475 ("We decline to infer from § 1325's incorporation of § 707 that Congress intended to eliminate, *sub silentio,* the

discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes.").

**34.** *Id.* at 2474 (internal quotation marks omitted).

**35.** *Id.* (internal quotation marks omitted).

**36.** *Id.* (citation and internal quotation marks omitted).

**37.** *Id.* at 2475–76.

would be allowed to pay their creditors far less than the amount they can actually afford to pay.

Very recently, and post-*Lanning*, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") addressed the same issue presented here in *In re Darrohn*.[38] In *Darrohn*, above-median income debtors calculated their projected disposable income by deducting mortgage payments on two pieces of real property.[39] One piece of real property was the debtors' primary residence; the other was the residence of the father of one of the debtors. It was undisputed that the debtors intended to surrender both properties under their Chapter 13 plan, and would no longer have to make the mortgage payments.[40] As in this case, the trustee objected, but the bankruptcy court overruled the objection. The bankruptcy court then confirmed the proposed plan, which included deductions for the mortgage payments on the property to be surrendered.[41] The Sixth Circuit granted direct appeal.[42]

The Sixth Circuit held that the bankruptcy court erred in confirming the debtors' proposed plan, in part because it failed to account for the debtors' intent to surrender the properties securing the mortgages.[43] In doing so, the Sixth Circuit stated:

While much of the Court's analysis in *Lanning* focused on the income side of the projected disposable income formulation, the holding clearly applied to "changes in the debtor's income or expenses. . . ." Further, the Court rested its holding on the meaning of the term "projected disposable income," which is calculated using a debtor's current monthly income and his reasonably necessary expenses. Thus, *Lanning* also governs the bankruptcy court's determination on the deduction for mortgage payments. Because it is undisputed that the [debtors] intended to surrender these properties, this represents a change in the [debtors'] "expenses that [was] known or virtually certain at the time of confirmation." The bankruptcy court therefore should have accounted for this changed circumstance, and its failure to do so violated the requirements of Section 1325.[44] The Sixth Circuit reversed the order confirming the plan, and remanded the case to the bankruptcy court for a determination of PDI in light of the change in circumstances, i.e., using the "forward-looking" approach.

Prior to *Lanning*, the United States Court of Appeals for the Seventh Circuit ("Seventh Circuit"), in *In re Turner*,[45] addressed the expense side of the calculation

---

**38.** *Darrohn v. Hildebrand (In re Darrohn)*, 615 F.3d 470 (6th Cir.2010).

**39.** *Id.* at 472.

**40.** *Id.*

**41.** *Id.* at 473.

**42.** *Id.* at 471.

**43.** *Id.* at 476. This case also involved an income issue similar to that in *Lanning*. However, rather than decreasing current monthly income used to calculate projected disposable income, application of the forward-looking approach in *Darrohn* increased the current monthly income. This was because one of the debtors had been unemployed for 90 days during the six-month lookback period, but was employed again at the time of plan confirmation. The Sixth Circuit applied the forward-looking approach because the more recent increased income figure better reflected projected income during the plan period. *Id.*

**44.** *Id.* (citations and emphasis omitted).

**45.** 574 F.3d 349 (7th Cir.2009).

of PDI, also on direct appeal.[46] In *Turner*, as in this case, the debtor argued that expenses under the means test, specifically payments on account of secured debt under § 707(b)(2)(A)(iii)(I), even in the context of computing PDI, must be determined as of the date the petition is filed. The Seventh Circuit replied:

> For some purposes—for example, determining whether the debtor is eligible for a Chapter 13 bankruptcy—his financial situation on the date of the filing of the declaration of bankruptcy *will* govern, in order that the right procedural vehicle (for example, whether it should be Chapter 13 or Chapter 7) can be determined at the outset. This approach is consistent with the principle that jurisdiction is determined by the facts as they exist when a case is filed and is unaffected by a subsequent change in those facts, such as a change of the state of residence by a party to a diversity suit. But that is not a problem in this case; [debtor's] eligibility to proceed under Chapter 13 is not in question.

> Since the object of a Chapter 13 bankruptcy is to balance the need of the debtor to cover his living expenses against the interest of the unsecured creditors in recovering as much of what the debtor owes them as possible, we cannot see the merit in throwing out undisputed information, bearing on how

much the debtor can afford to pay, that comes to light between the submission and approval of a plan of reorganization. Sometimes as in this case the creditors will benefit from the new information. But in other cases it will be the debtor, because the expenses that are deductible in determining his disposable income are as likely to rise unexpectedly between the dates of submission and approval as to fall.... [47]

With respect to the facts before it, the Seventh Circuit stated "all that is at issue is a fixed debt that we know will disappear before the Chapter 13 plan is approved." [48] It then concluded:

> A fixed debt that will disappear: the deduction of mortgage expense from the Chapter 13 debtor's disposable income is not intended to enrich the debtor at the expense of his unsecured creditors. It is intended to adjust the respective rights of a secured creditor—the mortgagee—and the unsecured creditors. [Debtor] wants to use a phantom deduction to reduce the recovery by his unsecured creditors without benefiting any other creditor.[49]

Here too, a fixed debt is disappearing, and the change in circumstances should inure to the benefit of the unsecured creditors, not the Liehrs.[50]

## V. CONCLUSION

The bankruptcy court's order confirming the Liehrs' Chapter 13 Plan over the ob-

46. *Id.* at 351.

47. *Id.* at 355–56 (citations omitted).

48. *Id.* at 356.

49. *Id.*

50. In its opinion, decided before the Supreme Court's *Lanning* decision, the bankruptcy court concluded that only a debtor may seek to modify PDI from the amount suggested by the means test, relying on the "special circumstances" language found in

§ 707(b)(2)(B)(i). *See Order* at 10, *in* Appellant's App. at 191. We disagree. *Lanning* makes it clear that under § 1325(b)(1), a trustee or any creditor may object to the confirmation of a plan on the basis that it does not provide for all PDI to be paid under said plan. If a party objects to a plan on the basis that the debtor is not utilizing all of his or her PDI to make payments thereunder, they may also object to the manner in which the debtor has calculated PDI. Any other ruling would violate *Lanning*.

jections of Zeman and eCast is reversed and remanded.